**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

JOHN J. JAQUEZ                                                                            PLAINTIFF
ADC #151676

v.                                          2:21-cv-00023-BSM-JJV

DEXTER PAYNE, Director, ADC; *et al.*                                  DEFENDANTS

**RECOMMENDED DISPOSITION**

    The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller.   Any party may serve and file written objections to this Recommendation.   Objections should be specific and include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation.   Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.    INTRODUCTION**

    John J. Jaquez ("Plaintiff") is a prisoner in the Cummins Unit of the Arkansas Division of Correction.   He has filed a *pro se* Amended Complaint and an Addendum, pursuant to 42 U.S.C. § 1983, alleging Defendants Sergeant Steven Mitchell, Sergeant Lester Fausnight, Sergeant Lyndon Allen, and Corporal Tiesha Johnson failed to protect him from being attacked by prisoners at the Delta Regional Unit on June 24, 2020.[1]   (Docs. 5, 7.)   Plaintiff brings these claims against

---

[1] On October 8, 2021, Defendants Payne, Budnick, Dykes, Arnold, Williams, Smith, and Brown were dismissed without prejudice because Plaintiff failed to exhaust his administrative remedies against them.   (Doc. 44.)   And, on May 24, 2022, I recommended the Doe Defendants be dismissed without prejudice due to a lack of service.   (Doc. 68.)

Defendants in their official and personal capacities.  (*Id.*)  As relief, he seeks compensatory and punitive damages.  *(Id.*)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to sovereign and qualified immunity.  (Docs. 64-67.)  Plaintiff has not filed a Response, and the time to do so has expired.  After careful consideration and for the following reasons, I recommend the Motion for Summary Judgment be GRANTED; Plaintiff's failure to protect claims against Defendants Mitchell, Fausnight, Allen, and Johnson be DISMISSED with prejudice; and this case be closed.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material

will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

III.   **FACTS**

The following undisputed facts are taken from Plaintiff's deposition (Doc. 64-2), Defendants' declarations (Docs. 64-3, 64-4, 64-5, 64-6), an infirmary report (Doc. 64-7), and a video recording of a small portion the incident (Doc. 67).   As will be discussed herein, the incident actually involved two fights.   But only the second fight appears on the video recording.

On June 24, 2020, Plaintiff was living in Barrack Four, which is a three-tiered barrack. (Doc. 64-2 at 5-10.)   Around 12:18 a.m., Plaintiff was on the bottom tier when he and inmate Gonzalez were attacked, for the first time, by six to eight inmates allegedly affiliated with the street gang, Bloods.   (*Id.*)   Plaintiff says he had no prior problems with his attackers, and they were not on his enemy alert list.   (*Id.*)   Instead, Plaintiff believes the surprise attack was a show of force or a "power trip" by the gang.   (*Id.*)   Corporal Johnson, who was in the control booth, radioed for backup.   (Docs. 64-3, 64-4, 64-5.)   When Sergeants Mitchell, Fausnight, Allen, and a non-party lieutenant entered the barracks, the fight (which did not involve any weapons) was over and none of the prisoners would say who was involved.   (*Id.*; Doc. 64-2 at 5-6.)   Importantly, Plaintiff, who was not injured, did <u>not</u> say he had been attacked, ask to be removed from the barrack, or otherwise express any fears for his safety.   (Docs. 64-2 at 6-12, 64-3, 64-5, 64-5.)   The officers looked for physical signs of who was in the fight, such as torn clothing, breathlessness, and visible injuries.   (Docs. 64-3, 64-4, 64-5.)   After doing so, Sergeants Fausnight and Allen removed Gonzalez, who had a small cut on his head, and inmate Frazier, who was out of breath, from the barrack and escorted them to pre-lockup screening.   (*Id.*)   Sergeant Mitchell went to the video booth where other officers were reviewing security footage to determine who was involved in the

3

fight.  (*Id*.)

Approximately five minutes later, Sergeant Mitchell noticed on a live camera that a second fight had erupted in the dayroom on the middle tier of Barrack Four, and he radioed for backup. (Docs. 64-2 at 7; 64-3.)  The video recording starts at 12:51:30 a.m. and the lights are on inside the barrack.  (Doc. 67.)  Around 12:51:33 a.m., inmate Finney approached Plaintiff, grabbed his shirt, and struck him numerous times.  (*Id*.)  It is impossible to see on the video recording if Finney had anything in his hand.  (*Id*.)  But Plaintiff says Finney stabbed him several times with a nine-inch icepick.  (Doc. 64-2 at 8.)  Eight seconds later, at 12:51:41, Plaintiff escaped Finney's grasp and ran away from him.  (Doc. 67.)  For the next eight seconds, Finney chased Plaintiff around benches in the dayroom until 12:51:49, when Finney gave up and went to the lower tier. (*Id*.)  This is where the video ends.  (*Id*.)  Plaintiff says Finney went to the lower tier, stabbed two more inmates, and hid the weapon.  (Doc. 64-2 at 8.)  Sergeants Fausnight, Allen, and another officer responded to Sergeant Mitchell's request for backup and entered the barrack where Plaintiff identified Finney as his attacker.  (Docs. 64-3, 64-4, 64-5.)  Sergeant Mitchell took Finney to pre-lockup screening while Sergeant Allen took Plaintiff to the infirmary.  (*Id*.) According to the infirmary report, Plaintiff had one stab wound to his left arm and two stab wounds to his back that were all less than 0.5 cm deep with minimal bleeding. (Doc. 64-7.)  A nurse cleaned the wounds and covered them with band-aids.  (*Id*.; Doc. 64-2 at 10.)

## IV.    DISCUSSION

### A.    Sovereign Immunity

Defendants Mitchell, Fausnight, Johnson, and Allen argue they are entitled to sovereign immunity from Plaintiff's request for monetary damages from them in their official capacities.  I agree.  The doctrine of sovereign immunity, which is derived from the Eleventh Amendment,

precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kruger v. Nebraska*, 820 F.3d 295, 301(8th Cir. 2016).   Defendants are state officials, and Arkansas has not waived its Eleventh Amendment immunity.   *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991).   Thus, they are entitled to sovereign immunity from Plaintiff's request for monetary damages from them in their official capacities.

### B.    Qualified Immunity

Defendants Mitchell, Fausnight, Allen, and Johnson also say they are entitled to qualified immunity on the failure to protect claim Plaintiff has raised against them in their individual capacities.   Qualified immunity protects government officials who acted in an objectively reasonable manner and shields them from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).   Qualified immunity is a question of law, not fact.   *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).   Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.

Defendants are entitled to qualified immunity if: (1) the facts, viewed in the light most favorable to Plaintiff do not establish a violation of his constitutional right to be protected from harm; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that reasonable officials would not have known their actions were unlawful.   *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).   Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 232; *Nelson v. Corr. Med. Servs*., 583 F.3d 522, 528 (8th Cir. 2009).   I find

5

Plaintiff is entitled to qualified immunity under the first prong.

Because Plaintiff was a convicted prisoner when he was attacked, his failure to protect claim falls under the Eighth Amendment.   Although prison officials have an Eighth Amendment obligation to "take reasonable measures to guarantee inmate safety," they are not liable "every time one inmate attacks another."  *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018); *Young v. Selk*, 508 F.3d 868, 871-72 (8th Cir. 2007).   Prison officials violate the Eighth Amendment "only when they exhibit a deliberate or callous indifference to an inmate's safety."  *Patterson,* 902 F.3d at 851; *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002).   Thus, to defeat qualified immunity and proceed to trial on his failure to protect claim, there must be evidence that: (1) objectively, there was a substantial risk Plaintiff would be seriously harmed by other prisoners; and (2) subjectively, Defendants knew of and deliberately disregarded that substantial risk of serious harm.   *See Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021); *Blair v. Bowersox,* 929 F.3d 981, 987 (8th Cir. 2019).

Importantly, Plaintiff admits he had no prior altercations with his attackers, they were not on his enemy alert list, and the first fight was a surprise.   The Eighth Circuit has repeatedly recognized that qualified immunity shields prison officials from an Eighth Amendment failure-to-protect claim when a prisoner is the victim of a surprise attack by another prisoner.   *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047-48 (8th Cir. 2010); *Patterson*, 902 F.3d at 845; *Tucker,* 276 F.3d at 1001-02.

In the Amended Complaint and Addendum, Plaintiff says Defendant Johnson violated his constitutional rights by failing to properly monitor Barrack Four from the control booth and that if she had done so, the first fight would have ended sooner.   (Docs. 5, 7.)   But Defendant Tiesha Johnson says in her sworn declaration she was not working on June 24, 2020, and that instead,

6

Corporal Lakendra Johnson was monitoring Barrack Four.  (Doc. 64-6.)  Plaintiff has not challenged that assertion or sought permission to substitute the proper party.  Because it is undisputed Defendant Tiesha Johnson was not personally involved in the June 24, 2020 incident, she is entitled to summary judgment.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 actions, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Further, even if Plaintiff had named the correct individual this claim would fail, as a matter of law, because negligence and even gross negligence in monitoring the barrack are not enough to sustain a constitutional violation, and Plaintiff concedes he suffered no injuries as a result of the first fight.  *See Patterson*, 902 F.3d at 852 (negligence and gross negligence are not enough to sustain an Eighth Amendment failure to protect claim); *Tucker,* 276 F.3d at 1002 (a guard's negligent failure "to properly supervise the barracks" was not enough to establish deliberate indifference); *Schoelch,* 624 F.3d at 1044-47 (8th Cir. 2010) (affirming summary judgment when a pretrial detainee suffered only *de minimis* injuries after being "slammed" against a wall by a prisoner).  Thus, I recommend Plaintiff's claim against Defendant Johnson be dismissed with prejudice.

Plaintiff also says Defendants Mitchell, Fausnight, and Allen violated his constitutional rights by failing to remain inside the barrack to supervise the inmates while other officers reviewed the security footage to determine who was involved in the first fight.[2]  (Docs. 5, 7, 64-2 at 5-7 and 10-12.)  Plaintiff believes that if they had done so, Finney would have been removed from the

---

[2]  In the Brief, Defendant Fausnight says Plaintiff is seeking to hold him liable on a theory of respondeat superior liability.  (Doc. 65 at 10.)  But I read Plaintiff's Amended Complaint, Addendum, and deposition as saying Defendant Fausnight was directly involved in failing to prevent the second fight from occurring, and I will give Plaintiff the benefit of that broader reading.

barrack and the second fight would not have occurred.   However, Plaintiff admits he did not, <u>in anyway</u>, attempt to notify Defendants while they were inside the barrack that he had been attacked or feared that he would be attacked a second time.   *See Patterson,* 902 F.3d at 851-52 (a prisoner's "inability to anticipate the surprise attack and his decision not to report his altercation with [another prisoner] the previous afternoon defeat liability").   It is well settled that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *see also Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019) (holding, in a prisoner's failure to protect case, that the negligence "should-have-known standard is not sufficient to support a finding of deliberate indifference").   To constitute deliberate indifference, a prison official must both be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Blair*, 929 F.3d at 987; *Schoelch,* 625 F.3d at 1046.   There is no evidence Defendants knew Plaintiff had been attacked or that there was a substantial likelihood he would be attacked again.   To the contrary, the only evidence in the record is that the first fight was over, none of the participants sought assistance or indicated there might be future problems, and Defendants left the barrack to complete their investigation of what they thought was a concluded event.

Finally, Plaintiff says in his Amended Complaint the second attack lasted approximately ten minutes.   (Doc. 7 at 2.)   And he claimed during his deposition that Defendants Mitchell and possibly Allen violated his constitutional rights by staying inside the video booth watching the second fight instead of coming inside to his aid. (Doc. 64-2 at 10-11.)   Both Defendants Mitchell and Allen deny doing so in their declarations.   (Docs. 64-3, 64-5.)   Further, even if I construe this factual dispute in Plaintiff's favor, it is well settled "prison guards have no constitutional duty to

intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Story v. Cashion,* No. 14-1724, 2014 WL 4745953 (8th Cir. Sept. 25, 2014).   More importantly, while the second fight understandably felt like it lasted ten minutes to Plaintiff, the video recording clearly demonstrates it lasted for only <u>eight seconds</u> with Plaintiff running away from his attacker for an additional eight seconds.  *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (at summary judgment, a court is not required to accept a plaintiff's version of the facts if they are blatantly contradicted by a video recording).   Clearly, that was insufficient time for Defendants to assemble a response team and enter the barrack containing an armed assailant and many other inmates.  *See Schoelch,* 625 F.3d at 1047 (affirming summary judgment when the "attack that followed played out so quickly" that no prison guard "reasonably could have intervened"); *Tucker*, 276 F.3d at 1002 (8th Cir. 2002) (affirming summary judgment when "by the time the [prison guard] knew something was wrong, the fight was already over").

Plaintiff also says that after the second fight started Defendants should have opened the barrack door to allow him to escape from his attacker.   But the Eighth Amendment only requires prison officials to "take reasonable measures" to abate substantial risks of harm.  *Patterson*, 902 F.3d at 85; *Berry v. Sherman*, 365 F.3d 631, 633–34 (8th Cir. 2004).   Opening a door to a barrack containing an armed inmate and many other prisoners, without proper back-up assistance, is not a reasonable measure.

That being said, I am not unsympathetic to the fear Plaintiff must have experienced as a result of the June 24, 2020 surprise attack and the possibility that he could have sustained grave injuries.   But deliberate indifference is a high threshold.   And nothing in the record before me suggests Defendants were deliberately indifference to their constitutional duty to protect Plaintiff

9

from harm on June 24, 2020. Thus, I find they are entitled to qualified immunity, and I recommend the failure to protect claims raised against them be dismissed with prejudice.

V.    **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. 64) be GRANTED, Plaintiff's failure to protect claim against Defendants Mitchell, Fausnight, Allen, and Johnson be DISMISSED with prejudice, and this case be CLOSED.

2.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 25th day of May 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE